___



SO ORDERED,

**Judge Neil P. Olack**
United States Bankruptcy Judge
Date Signed: June 15, 2016

The Order of the Court is set forth below. The docket reflects the date entered.
___

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF MISSISSIPPI

| | |
|---|---|
| IN RE: | |
| VALERIE DENISE NICKELSON, | CASE NO. 15-01271-NPO |
| DEBTOR. | CHAPTER 13 |
| VALERIE DENISE NICKELSON | PLAINTIFF |
| VS. | ADV. PROC. NO. 15-00046-NPO |
| FRANKLIN CHECK SERVICE, LLC AND JOHN LAIRD | DEFENDANTS |

### MEMORANDUM OPINION AND ORDER ON COMPLAINT
### PHASE TWO: PUNITIVE DAMAGES AND ATTORNEYS' FEES

The liability phase ("Phase One")[1] of the trial of the above-referenced adversary proceeding (the "Adversary") took place on January 13, 2016. In Phase One of the trial, the Court found that there was no valid sale of the mobile home to John Laird ("Laird") and no lawful title loan on the mobile home by Franklin Check Service, LLC ("Franklin Check Service" or, together with Laird, the "Defendants"). *See* Memorandum Opinion and Order on Complaint

---

[1] With the consent of the parties, the Court bifurcated the bench trial into two phases: (1) liability and (2) punitive damages and attorneys' fees.

and Motion to Lift Automatic Stay (the "Liability Opinion") (Adv. Dkt. 32).[2] Based on these findings, the Court concluded that the debtor, Valerie Denise Nickelson (the "Debtor"), established a constructive fraud claim under 11 U.S.C. § 548 and was entitled to recover the Certificate of Title to the mobile home under 11 U.S.C. § 550. (Liability Op. at 27). The Court also concluded that the Debtor proved fraud in the inducement under Mississippi law. (*Id.*).

The punitive damages and attorneys' fees phase ("Phase Two") of the trial took place on May 12, 2016. In Phases One and Two, Thomas Carl Rollins, Jr. ("Rollins") represented the Debtor, and Kenneth T. O'Cain represented the Defendants. Having considered the pleadings as well as the testimony, exhibits, and the arguments of counsel presented at Phases One and Two of the trial, the Court makes the following findings of fact and conclusions of law:[3]

## Jurisdiction

The Court has jurisdiction over the parties to and the subject matter of the Adversary pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(K) and (O). Notice of Phase Two of the trial was proper under the circumstances.

## Facts

The Court recounts only those facts that are pertinent to the issues of punitive damages and attorneys' fees. Unless otherwise noted, the facts below are derived from the Court's Liability Opinion.

In need of funds, the Debtor drove to Franklin Check Service on December 18, 2014, to obtain a title loan on a mobile home that she recently purchased for $8,700.00. Franklin Check

---

[2] Citations to docket entries in the Adversary are cited as "(Adv. Dkt. ____)" and citations to docket entries in the above-styled bankruptcy case (the "Bankruptcy Case") are cited as "(Bankr. Dkt. ____)".

[3] Specifically, the Court makes the following findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

Service is a consumer financial services business that provides title loans, payday loans, and bill payment services. Laird is the sole owner of Franklin Check Service. When the Debtor arrived at Franklin Check Service, she spoke with Laird and Valerie Delozier ("Delozier"), who was Franklin Check Service's sole employee at the time. Laird inspected the mobile home and, thereafter, the Debtor signed several documents and left the office. When she returned the next day, December 19, 2014, Laird handed the Debtor a check in the amount of $2,500.00, the Debtor endorsed the check to Laird, and Laird handed her $2,500.00 in cash. The Debtor then gave Laird the original Certificate of Title to the mobile home.

The parties disputed the nature of the transaction involving the mobile home. During Phase One of the trial, the Debtor testified that she had obtained a title loan of $2,500.00 on the mobile home from Franklin Check Service. She produced two (2) handwritten receipts from Franklin Check Service indicating that she had made two (2) monthly loan payments totaling $500.00 to Franklin Check Service. She insisted she would never have sold the mobile home to Laird for $2,500.00.

Contrary to the Debtor's testimony, Laird alleged that the Debtor sold the mobile home to him for $2,500.00. Laird claimed he abandoned the prospect of Franklin Check Service giving the Debtor a title loan on the mobile home after he called the Mississippi Department of Banking and Consumer Finance (the "Banking Department")[4] and was told that Mississippi law did not permit such loans. He nevertheless told the Debtor that they would "work something out." According to Laird, he then offered to buy the mobile home for $2,500.00. To support his

---

[4] The Banking Department is the licensing and regulatory agency of the Mississippi Title Pledge Act, MISS. CODE ANN. § 75-67-401 *et seq*.

version of events, Laird produced a Bill of Sale, purportedly signed by the Debtor on December 18, 2014.

On April 17, 2015, the Debtor filed a petition for relief (the "Petition") (Bankr. Dkt. 1) pursuant to chapter 13 of the Bankruptcy Code.[5] In her chapter 13 plan (the "Plan") (Bankr. Dkt. 2), filed contemporaneously with the Petition, the Debtor proposed to pay Franklin Check Service the balance of a title loan, $3,687.00, at an annual interest rate of five percent (5%). In the Plan, she valued the mobile home at $10,000.00. On July 27, 2015, the Debtor filed a modified chapter 13 plan (Bankr. Dkt. 43) in which she proposed to pay nothing to Franklin Check Service or Laird for the mobile home.

The Debtor initiated the Adversary by filing the Complaint (the "Complaint") (Adv. Dkt. 1) against the Defendants on July 1, 2015. In the Complaint, the Debtor asked the Court, *inter alia*, to avoid the purported sale of the mobile home as a "constructive fraudulent transfer" under § 522(g), § 522(h), § 548(a), and § 550. (Compl. at 3-4). She asserted a separate state law claim for "intentional misrepresentation and fraud" and sought attorneys' fees and punitive damages in connection with that claim. (*Id.* at 4-6). On July 6, 2015, the Defendants filed the Answer to Complaint and Demand for Jury (Adv. Dkt. 4), denying the Debtor's claims.[6]

The Pretrial Order for Adversary Proceeding 15-00046-NPO, Motion to Lift Automatic Stay, Response to Motion to Lift Automatic Stay, and Order Consolidating Motion to Lift Automatic Stay and Response to Motion to Lift Automatic Stay with Adversary Proceeding (the "Pretrial Order") (Adv. Dkt. 29) was entered on January 11, 2016. In the Pretrial Order, the

---

[5] Hereinafter, the "Code" refers to the United States Bankruptcy Code found at title 11 of the United States Code, and all code sections refer to the Code unless otherwise noted.

[6] On August 14, 2015, the Defendants filed the Withdrawal of Jury Demand (Adv. Dkt. 9).

Debtor cited § 548 and state common law as the basis for her claims. As damages, she sought the return of the Certificate of Title or, in the alternative, $10,000.00, the alleged value of the mobile home, pursuant to § 550. In connection with her state law claim, she sought punitive damages of $10,000.00 and attorneys' fees and expenses of $6,155.00, plus attorneys' fees and expenses accruing after December 29, 2015. In the Pretrial Order, the issues of punitive damages and attorneys' fees and expenses were reserved for a separate hearing contingent on the outcome of Phase One of the trial.

On February 19, 2016, the Court issued the Liability Opinion. In this dispute over the nature of the transaction, the Court found in the Liability Opinion that Laird fraudulently induced the Debtor into selling the mobile home. Laird falsely represented to the Debtor that she was signing a promissory note for the purpose of obtaining a title loan on the mobile home when in fact she was signing the Bill of Sale. Because Franklin Check Service could lose its title loan license if it granted a title loan on a mobile home, and because Laird himself knew that he was not licensed to grant any title loan himself, he transformed the title loan transaction into a purported sale to circumvent Mississippi law. In the end, the Court did not believe that the Debtor would have agreed to sell her mobile home to Laird for only $2,500.00 when she had recently purchased it for $8,700.00.

After finding in the Liability Opinion that the Debtor received less than a reasonably equivalent value in exchange for the mobile home and that she was insolvent on the date of the sale, the Court concluded that the Debtor had established constructive fraud under § 548(a)(1)(B). Because the Debtor and her two (2) children currently occupy the mobile home, the Court found it unnecessary to return physical possession of the mobile home to the Debtor,

but ordered Laird to return the Certificate of Title to her. *See* 11 U.S.C. § 550(a) (permitting recovery of the property transferred or the value of such property).

In addition to constructive fraud under § 548(a)(1)(B), the Court found in the Liability Opinion that the Debtor also established fraud in the inducement under Mississippi law. The Court found by clear and convincing evidence that the Debtor was induced to sign the Bill of Sale based upon Laird's assertion that the document was in contemplation of a title loan when it purportedly constituted a conveyance of the mobile home. The Court noted in the Liability Opinion that a separate hearing on the issues of punitive damages and attorneys' fees would be set at a later date.

Aggrieved by the Liability Opinion, on March 1, 2016, the Defendants filed a Motion for Reconsideration (the "Motion for Reconsideration") (Adv. Dkt. 35) pursuant to Rules 52(b), 54(b), and 59(e) of the Federal Rules of Civil Procedure, as made applicable by Rules 7052, 7054, and 9023 of the Federal Rules of Bankruptcy Procedure. The Defendants sought an evidentiary hearing to address the testimony of two new witnesses who purportedly were in the offices of Franklin Check Services when the disputed transaction took place. One of them was allegedly in the same room with the Debtor and Laird; the other was allegedly behind a curtain or divider. Both witnesses testified by affidavit that they allegedly overheard Laird buying the mobile home from the Debtor. Also in the Motion for Reconsideration, the Defendants asked the Court to reconsider its factual finding on page four (4) of the Liability Opinion that Laird cashed the $2,500.00 check as part of the transaction. The Debtor filed the Response to Motion for Reconsideration (Adv. Dkt. 44) on March 23, 2016. After a hearing, the Court entered the Order Denying Motion for Reconsideration (Adv. Dkt. 48) on April 6, 2016. Applying the standards of Rule 7054(b) of the Federal Rules of Bankruptcy Procedure, the Court found that the testimony

of the additional witnesses was not new or credible, and was cumulative. As to the cashing of the check, the Court found that the Debtor's testimony supported this finding, and regardless, this fact was immaterial to the Court's findings that there was no valid sale of the mobile home and no lawful title loan on the mobile home. For those reasons, the Court denied the Motion for Reconsideration.

At the beginning of Phase Two of the trial on May 12, 2016, the Debtor announced that she no longer seeks punitive damages or attorneys' fees from Franklin Check Service but now asserts those claims only against Laird. The withdrawal of her claims against Franklin Check Service rendered moot two (2) issues raised by the Court in the Liability Opinion: (1) whether Franklin Check Service could be held liable under agency law principles for the actions of its sole owner, Laird, when Franklin Check Service did not benefit from the sale of the mobile home and (2) whether Mississippi law recognized vicarious liability for punitive damages.

On the issue of punitive damages, the Debtor presented no additional evidence but relied on the facts as found in the Liability Opinion. On the issue of attorneys' fees and expenses, Rollins testified regarding the fees and expenses of The Rollins Law Firm, PLLC incurred in pursuing the Adversary. An invoice itemizing these fees and expenses was introduced into evidence as Debtor's Exhibit 1 without objection from Laird.

## Discussion

In Mississippi, where there is no contractual provision or statutory authority for attorney's fees, they may be awarded only in cases where an award of punitive damages is proper. *Aqua-Culture Techs., Ltd. v. Holly*, 677 So. 2d 171, 185 (Miss. 1996). Thus, the Court considers first the issue of punitive damages.

A.     **Punitive Damages**

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Life & Cas. Ins. Co. of Tenn. v. Bristow*, 529 So. 2d 620, 622 (Miss. 1988) (quoting *Standard Life Ins. Co. v. Veal*, 354 So. 2d 239, 247 (Miss. 1978)). "As a general rule, exemplary or punitive damages are 'added damages' and are in addition to the actual or compensatory damages due because of an injury or wrong." *Summers ex rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (Miss. 2000) (citing *Fowler Butane Gas Co. v. Varner*, 141 So. 2d 226, 233 (1962)). "The kind of wrongs to which punitive damages are applicable are those which . . . import insult, fraud, or oppression and not merely injuries but injuries inflicted in the spirit of wanton disregard for the rights of others." *Id.* An award of punitive damages requires "some element of aggression or some coloring of insult, malice or gross negligence, evincing ruthless disregard for the rights of others, so as to take the case out of the ordinary rule." *Bradfield v. Schwartz*, 936 So. 2d 931, 936 (Miss. 2006).

Mississippi statutory law allows for punitive damages only where there is clear and convincing evidence that the defendant "acted with actual malice, gross negligence which evidences a willful, wanton, or reckless disregard for the safety of others, or committed actual fraud." MISS. CODE ANN. § 11-1-65(1)(a). In addition, Mississippi's statute provides a detailed list of factors a court must consider, "to the extent relevant," in determining the amount of punitive damages, including the defendant's "financial condition and net worth" and the "nature and reprehensibility of the defendant's wrongdoing." MISS. CODE ANN. § 11-1-65(1)(e).

In support of his contention that the Court's findings of facts do not support an award of punitive damages, Laird emphasized the "he said, she said" nature of the dispute. He denied that

there was any evidence indicating that he intentionally "tricked" the Debtor into signing the Bill of Sale. According to Laird, there was no evidence that he obscured from the Debtor's view the top portion of the Bill of Sale, where the title of the document was clearly visible, when she signed her name to the bottom of the page. He characterized the disputed transaction as a misunderstanding. Laird also maintained that he showed proper respect for the bankruptcy process. For example, he contends he was never late in serving discovery responses, and his actions never actually resulted in the Debtor's eviction from the mobile home. Finally, he points out that no proof of claim was filed in the Bankruptcy Case for a return of the $2,500.00 paid to the Debtor.

Laird cited *Thomas v. Rice (In re Rice)*, 526 B.R. 631 (Bankr. N.D. Miss. 2015), a case in which this Court declined to award punitive damages. There, the debtor falsely represented to the buyer of a mobile home that she would convey clear title upon his completion of payments under a lease-purchase agreement. *Id*. at 646. The debtor knew, however, that there was a lien on the mobile home that prevented her from fulfilling that promise. *Id*. Although the debtor's actions were intentional and premeditated, the Court concluded that the totality of the circumstances did not justify an award of punitive damages but recognized that it was a "close case." *Id*. at 648. Laird likewise asks the Court to forego any punitive damages award in the Adversary.

The Court disagrees with Laird's suggestion that his conduct was appropriate in his dealings with the Debtor and during his litigation of the Adversary. For example, at the bottom of the Bill of Sale, the date "12/18/2014" was handwritten in two (2) places. These dates, however, appeared to have been changed from "12/19/2014" to "12/18/2014." Yet neither Laird nor Delozier could explain the alteration at Phase One of the trial, even though both of them

testified that only they had access to the vault where the document was stored. Also during Phase One of the trial, Laird gave Delozier (without the knowledge of his counsel) a loan file that the Defendants never produced to the Debtor in discovery and that Laird alleged he had only found that morning. Then, after the Court rendered its Liability Opinion, the Defendants filed a Motion for Reconsideration based on their discovery, more than one (1) year after the transaction, of two (2) surprise witnesses who were allegedly in the office when the disputed transaction took place and whose testimony conveniently supported Laird's version of the events. The Court denied the Motion for Reconsideration, in part, because the evidence showed that the Defendants did not conduct any investigation to find these purported witnesses prior to Phase One of the trial. Moreover, the Court found that the affidavit testimony of the purported witnesses lacked credibility.

The Court finds that Laird's conduct surrounding the disputed transaction justifies an award of punitive damages, but not in the amount of $10,000.00 sought by the Debtor. Rather, the Court awards the Debtor punitive damages in the amount of $1,500.00. This amount consists of the installment payments made by the Debtor in the total amount of $500.00 on the purported title loan and an additional $1,000.00 and is consistent with the amount of punitive damages awarded by this Court in *Burns v. Home Zone Sales & Lease Purchase, LLC (In re Burns)*, 503 B.R. 666 (Bankr. S.D. Miss. 2013). There, the Court awarded $2,500.00 in punitive damages after finding that the actions of the creditor demonstrated a blatant and willful disregard for the bankruptcy process and the protections afforded debtors by the automatic stay. *Id*. at 680. Laird's conduct likewise demonstrated a blatant and willful disregard for the rights of the Debtor and in addition, amounted to actual fraud.

B.     **Attorneys' Fees & Expenses**

Having awarded punitive damages to the Debtor, the Court finds that the Debtor is also entitled to an award of her attorneys' fees and expenses incurred in the Adversary. *See Aqua-Culture*, 677 So. 2d at 184. She seeks fees and expenses of $15,649.48 for work performed by The Rollins Law Firm, PLLC from June 29, 2015 through May 12, 2016. (Debtor's Ex. 1). She submitted an invoice itemizing the fees incurred by Rollins and Jennifer Calvillo ("Calvillo"), an associate attorney. (*Id*.).

In Mississippi, an attorney's fees award is based initially on the "lodestar" method. *BellSouth Personal Commc'ns, LLC v. Bd. of Supervisors*, 912 So. 2d 436 (Miss. 2005). "In calculating the 'lodestar' fee, [t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation, multiplied by a reasonable hourly rate." *Id*. at 446-47. Then, the reasonableness of the fee is considered by reference to the eight (8) factors enumerated in Rule 1.5 of the Mississippi Rules of Professional Conduct. *In re Estate of Gillies*, 830 So. 2d 640, 646 (Miss. 2002). Known as the "*McKee* factors" because they were first issued in *McKee v. McKee*, 418 So. 2d 764, 767 (Miss. 1982), they are:

> 1.    the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> 2.    the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> 3.    the fee customarily charged in the locality for similar legal services;
>
> 4.    the amount involved and the results obtained;
>
> 5.    the time limitations imposed by the client or by the circumstances;
>
> 6.    the nature and length of the professional relationship with the client;

    7.    the experience, reputation, and ability of the lawyer or lawyers performing the services; and

    8.    whether the fee is fixed or contingent.

*BellSouth Personal Commc'ns*, 912 So. 2d at 446. In addition, M<small>ISS</small>. C<small>ODE</small> A<small>NN</small>. § 91-1-41 requires a court to make an award of reasonable attorney's fees "based on the information already before it and the court's own opinion based on experience and observation."

### 1. Lodestar Method

Applying the lodestar method, Rollins expended a total of 59.3 hours (calculated to a tenth of an hour) litigating the Adversary. For 56.7 of the total hours, he billed his full hourly rate of $250.00. Multiplying these figures together yields a total of $14,175.00.[7] For the remaining 2.6 of his total hours spent traveling to a deposition, Rollins billed $125.00, half his hourly rate, which yields a total of $325.00. When the fees billed at half his hourly rate are added to the fees billed at his full hourly rate, the total fees for Rollins is $14,500.00.[8]

According to Debtor's Exhibit 1, Calvillo expended a total of 3.07 hours assisting Rollins in the litigation of the Adversary. The entry dated March 16, 2016, shows that Calvillo spent 1.77 hours listening to an audio recording of Phase One of the trial. This entry is inconsistent with Rollins' testimony that all time was billed to a tenth of an hour. Rollins explained that Calvillo mistakenly used a timer to bill the precise time spent on the task described in that particular entry. The Court, therefore, adjusts this entry upward to 1.8 hours. With this adjustment, the total hours expended by Calvillo is 3.1, and her total hours multiplied by her

---

[7] $14,175.00 = 56.7 hours x $250.00.

[8] $14,500.00 = $14,175.00 + $325.00.

hourly rate of $150.00 yields a total of $465.00 in fees.[9]  Combined, Rollins and Calvillo charged fees of $14,965.00 for litigating the Adversary.

The Debtor did not dispute the reasonableness of the hourly billing rates of Rollins and Calvillo.  Rollins was admitted to practice law in 2010, and Calvillo, in 2013.  Rollins testified that he has filed over nine hundred (900) bankruptcy cases and commenced approximately twenty-six (26) adversary proceedings.  Based on the realm of fees awarded in other cases in this judicial district, the Court finds that $250.00 and $150.00 are reasonable hourly rates for attorneys of Rollins' and Calvillo's experiences and qualifications, respectively.

As to the number of hours billed, Laird's counsel questioned Rollins about the extent of Calvillo's active participation during Phase One of the trial.  Rollins, however, did not bill for the time Calvillo spent attending Phase One.  The Court's review of Debtor's Exhibit 1 indicates that the 3.1 hours billed for Calvillo's time did not duplicate any time billed by Rollins and was otherwise reasonable and necessary.  The Court next considers whether any of the *McKee* factors support an upward or downward departure from the total lodestar amount of $14,965.00.

### 2.    *McKee* Factors

With regard to the *McKee* factors, no evidence was presented that would justify a departure from the lodestar amount.  Although Rollins testified that he "turned off" marketing for his legal services for several weeks in November, 2015, December, 2015, and January, 2016, he was unable to name any client that he actually turned away because of his representation of the Debtor in the Adversary.  Although Rollins and Calvillo succeeded in their representation of the Debtor, the Court finds that a deviation from the lodestar amount is not appropriate under

---

[9] $465.00 = 3.1 hours x $150.00.

these circumstances. In sum, after considering the *McKee* factors, the Court finds that no adjustments to the lodestar figure of $14,965.00 is warranted.

### 3. Expenses

The Debtor also seeks, without objection by Laird, expenses charged by Rollins in the amount of $689.48 for deposition and audio-recording fees. The Court finds that the Debtor is entitled to an award of all of the requested expenses.

### Conclusion

Based on the above, the Court finds that the Debtor is entitled to an award of punitive damages in the amount of $1,500.00. Moreover, the Debtor is entitled to a total of $14,965.00 in attorneys' fees and $689.48 in expenses without prejudice to the Debtor's ability to seek additional fees and expenses for services rendered after May 12, 2016, including any services rendered in an appeal. In addition, the Debtor is entitled to post-judgment interest calculated in accordance with 28 U.S.C. § 1961(a) from the date of the entry of final judgment until paid, and all costs of court. A separate final judgment shall be entered in accordance with Rules 7054 and 9021 of the Federal Rules of Bankruptcy Procedure.

##END OF OPINION##